**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: ) | |
| ) | In Proceedings Under Chapter 11 |
| T&J RESTAURANTS, LLC, ) | |
| ) | Case No. 11-31622 |
| Debtor. ) | |
| ) | |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING: (A) DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; AND (B) APPROVING AND AUTHORIZING DEBTOR TO ENTER INTO CERTAIN RELATED LOAN DOCUMENTS**

COMES NOW Debtor and Debtor-in-Possession T&J Restaurants, LLC ("**Debtor**") by and through its undersigned counsel and moves the Court, pursuant to Section 363 of the Bankruptcy Code, and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for the entry of interim and final orders: (a) authorizing the Debtor to use Cash Collateral (as such term is defined in Section 363(a) of the Bankruptcy Code); and (b) approving and authorizing the Debtor to enter into certain related financing documents. In support of this Motion, the Debtor respectfully states and alleges as follows:

**I     BACKGROUND**

1.     On July 21, 2011 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Illinois.

2.     The Debtor continues to operate its business and manage its affairs as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case, and no official committee of creditors or equity interest holders has been established in this case.

## II. DEBTOR'S PRE-PETITION RELATIONSHIP WITH GE CAPITAL

3. Debtor's primary secured creditor is GE Capital ("**GE**").

4. As of the Petition Date, Debtor owed GE, without defense, counterclaim or offset, the approximate sum of $4,892,939.74 under the Agreement and the GE Agreement plus accrued and unpaid interest thereon and fees and costs. These amounts together with all interest, fees, costs, and charges, are identified as the "**Pre-petition Indebtedness**."

5. The Pre-petition Indebtedness is secured by valid, perfected, enforceable, first-priority liens and security interests upon and in substantially all of the assets and property of the Debtor, including without limitation, goods, inventories, equipment, accounts, chattel paper, general intangibles and proceeds of the foregoing (the "Pre-petition Collateral"). All of the cash of the Debtor constitutes Pre-petition Collateral or the proceeds of the Pre-petition Collateral and, therefore, is cash collateral of GE within the meaning of Bankruptcy Code §363(a) (the "Cash Collateral").

6. The Debtor believes that depending upon the collectability of certain amounts owed to the Debtor by third parties, GE may be undersecured.

## III. THE DEBTOR'S NEED FOR USE OF CASH COLLATERAL

7. The Debtor requires the use of cash collateral to continue its business operations and to pay its regular daily expenses, including employees' wages, utilities, and its other costs of doing business.

8. The Debtor requires cash collateral to meet post-petition payroll, to pay necessary business expenses, and to continue its operations. A Monthly Budget, showing the amount of funds needed to maintain Debtor's operations until the entry of a final order permitting use of cash collateral, is attached hereto as **Exhibit A**.

9. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the use of the Cash Collateral. The Debtor's ability to preserve their relationship with customers **[critical vendors]**, to pay its employees and to otherwise finance its operations, is essential to the Debtor's continued viability. In the absence of the use of the Cash Collateral, serious and irreparable harm to the Debtor and its estate would occur. The preservation and maintenance relations with customers, the preservation of the going concern value of the Debtor and the reduction of claims against the Debtor are of utmost significance and importance to a successful reorganization of the Debtor under Chapter 11 of the Bankruptcy Code.

10. The ability of the Debtor to continue in business and remain a viable entity and to have any prospect to propose a plan of reorganization under Chapter 11 of the Bankruptcy Code depends upon obtaining such authority to immediately use cash collateral on the Petition Date.

11. Absent the requested relief, the Debtor will be unable to pay its payroll and payroll expenses, operating expenses, and to otherwise operate its business and preserve its assets. Immediate and irreparable harm to the Debtor's business and value of its estate will occur absent the relief requested herein.

12. Pursuant to Section 363(c)(2) of the Bankruptcy Code, if GE's interest in cash collateral is valid, the Debtor may use cash collateral only with the consent of GE or with the Court's approval.

13. GE's interest in cash collateral is adequately protected. Such adequate protection will be provided to GE through the preservation of the Debtor's value as a going concern.

14. Approval of the attached Interim Order is in the best interest of the Debtor's estate, and the Debtor believes that other creditors will not be prejudiced by the entry of the Interim Order.

15. The Debtor requests that it be immediately authorized, pursuant to Section 363(c) of the Bankruptcy Code, to use cash collateral according to the terms of the Interim Order.

## V. REQUEST FOR INTERIM RELIEF

16. Use of cash collateral represents the Debtor's sole source of operating funds and working capital. Without the right to use cash collateral, the Debtor would be forced to cease operations. The Debtor seeks, therefore, after a preliminary hearing, immediate use of cash collateral to avoid immediate and irreparable harm to the Debtor and its estate.

## VI. NOTICE

17. No creditors' committee has been appointed in this Chapter 11 case. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the United States Trustee; (b) the Debtor's 20 largest unsecured creditors as identified in its Chapter 11 petition; and (c) any party with an interest in the Cash Collateral. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

18. The Debtor further requests that the Court deem service of this Motion, pursuant to Bankruptcy Rules 4001(b)(1) and 4001(c)(1) and service of the Interim Order, good and sufficient notice of the final hearing.

## VII. NO PRIOR REQUEST

19. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, Debtor T&J Restaurants, LLC respectfully requests that the Court enter an Interim Order after a preliminary hearing:

    A.    Authorizing the Debtor's immediate use of cash collateral in an amount sufficient to avoid immediate and irreparable harm to the Debtor and its estate;

    B.    After a final hearing, enter a final order authorizing the Debtor use of cash collateral in the ordinary course of the Debtor's business;

    C.    Authorizing secured post-petition financing on a superpriority basis; and

    Respectfully submitted,

    T&J RESTAURANTS, LLC

    */s/ Robert E. Eggmann*

By: _____
    One of their Attorneys

Robert E. Eggmann, Illinois Bar #6203021
Thomas H. Riske, Illinois Bar #6301953
LATHROP & GAGE, LLP
7701 Forsyth Boulevard, Suite 400
St. Louis, MO  63105
314-613-2800 (Telephone)
314-726-2801 (Fax)
reggmann@lathropgage.com
triske@lathropgage.com

16614499v1

5

EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| Revised July 19th 2011 | | | | | | |
| | | | Budget | | | |
| | | | | | | |
| | | | | | | 3 Period |
| | P8 | | P9 | | P10 | TOTAL |
| FOOD SALES | 875,000.00 | 83.33% | 756,000.00 | 84.19% | 730,000.00 | 84.25% | 2,361,000.00 |
| | | | | | | | |
| BEER SALES | 50,000.00 | 4.76% | 36,000.00 | 4.01% | 35,000.00 | 4.04% | 121,000.00 |
| LIQUOR SALES | 120,000.00 | 11.43% | 102,000.00 | 11.36% | 98,000.00 | 11.31% | 320,000.00 |
| WINE SALES | 5,000.00 | 0.48% | 4,000.00 | 0.45% | 3,500.00 | 0.40% | 12,500.00 |
| BAR SALES | 175,000.00 | 16.67% | 142,000.00 | 15.81% | 136,500.00 | 15.75% | 453,500.00 |
| TOTAL SALES | 1,050,000.00 | 100.00% | 898,000.00 | 100.00% | 866,500.00 | 100.00% | 2,814,500.00 |
| TOTAL FOOD COST | 263,200.00 | 30.08% | 227,404.80 | 30.08% | 219,584.00 | 30.08% | 710,188.80 |
| TOTAL BAR COST | 34,527.50 | 19.73% | 28,016.60 | 19.73% | 26,931.45 | 19.73% | 89,475.55 |
| TOTAL COST OF GOODS SOLD | 297,727.50 | 28.30% | 255,421.40 | 28.30% | 246,515.45 | 28.30% | 799,664.35 |
| GROSS PROFIT | 752,272.50 | 71.65% | 642,578.60 | 71.56% | 619,984.55 | 71.55% | 2,014,835.65 |
| TOTAL MANAGEMENT SALARIES | 85,995.00 | 8.19% | 73,546.20 | 8.19% | 70,966.35 | 8.19% | 230,507.55 |
| TOTAL BACK OF HOUSE LABOR | 125,212.50 | 14.31% | 128,503.80 | 14.31% | 123,996.15 | 14.31% | 377,712.45 |
| TOTAL FRONT OF HOUSE LABOR | 97,230.00 | 9.26% | 83,154.80 | 9.26% | 80,237.90 | 9.26% | 260,622.70 |
| TOTAL OTHER PAYROLL | 42,840.00 | 4.08% | 36,638.40 | 4.08% | 35,353.20 | 4.08% | 114,831.60 |
| TOTAL LABOR | 351,277.50 | 33.46% | 321,843.20 | 30.65% | 310,553.60 | 29.58% | 983,674.30 |
| MEDIA ADVERTISING | 4,620.00 | 0.44% | 3,951.20 | 0.44% | 3,812.60 | 0.44% | 12,383.80 |
| ADV/PROMO-DINER AWARDS | 210.00 | 0.02% | 179.60 | 0.02% | 173.30 | 0.02% | 562.90 |
| ADVERTISING STORE EXPENSE | 5,250.00 | 0.50% | 4,490.00 | 0.50% | 4,332.50 | 0.50% | 14,072.50 |
| TOTAL ADVERTISING | 10,080.00 | 0.96% | 8,620.80 | 0.96% | 8,318.40 | 0.96% | 27,019.20 |
| UNIFORMS | 840.00 | 0.08% | 718.40 | 0.08% | 693.20 | 0.08% | 2,251.60 |
| LINEN | 2,205.00 | 0.21% | 1,885.80 | 0.21% | 1,819.65 | 0.21% | 5,910.45 |
| CHARCOAL | 5,250.00 | 0.50% | 4,490.00 | 0.50% | 4,332.50 | 0.50% | 14,072.50 |
| TABLEWARE | 735.00 | 0.07% | 628.60 | 0.07% | 606.55 | 0.07% | 1,970.15 |
| SUPPLIES | 28,560.00 | 2.72% | 24,425.60 | 2.72% | 23,568.80 | 2.72% | 76,554.40 |
| GLASSWARE | 315.00 | 0.03% | 269.40 | 0.03% | 259.95 | 0.03% | 844.35 |
| SILVERWARE/UTENSILS | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| SMALL EQUIPMENT | 840.00 | 0.08% | 718.40 | 0.08% | 693.20 | 0.08% | 2,251.60 |
| CLEANING SUPPLIES | 6,615.00 | 0.63% | 5,657.40 | 0.63% | 5,458.95 | 0.63% | 17,731.35 |
| TOTAL TARGET D.O.E. | 45,465.00 | 4.33% | 38,883.40 | 4.33% | 37,519.45 | 4.33% | 121,867.85 |
| CLEANING SERVICES | 1,050.00 | 0.10% | 898.00 | 0.10% | 866.50 | 0.10% | 2,814.50 |
| VEHICLE EXPENSE | 1,155.00 | 0.11% | 987.80 | 0.11% | 953.15 | 0.11% | 3,095.95 |
| DISTRIBUTION FEE/FUEL SURCHARGE | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| TELEPHONE | 2,310.00 | 0.22% | 1,975.60 | 0.22% | 1,906.30 | 0.22% | 6,191.90 |
| REPAIRS & MAINTENANCE | 25,515.00 | 2.43% | 21,821.40 | 2.43% | 21,055.95 | 2.43% | 68,392.35 |
| EQUIP RENTAL-CABLE-MUSIC | 3,255.00 | 0.31% | 2,783.80 | 0.31% | 2,686.15 | 0.31% | 8,724.95 |
| UTILITIES | 48,720.00 | 4.64% | 41,667.20 | 4.64% | 40,205.60 | 4.64% | 130,592.80 |
| TOTAL D.O.E. OTHER | 82,110.00 | 7.82% | 70,223.60 | 7.82% | 67,760.30 | 7.82% | 220,093.90 |
| TOTAL DIRECT OPERATING EXPENSE | 127,575.00 | 12.15% | 109,107.00 | 10.39% | 105,279.75 | 10.03% | 341,961.75 |
| ACCOUNTING FEES | 1,260.00 | 0.12% | 1,077.60 | 0.12% | 1,039.80 | 0.12% | 3,377.40 |
| LEGAL FEES | 25,200.00 | 2.40% | 13,470.00 | 1.50% | 12,997.50 | 1.50% | 51,667.50 |
| CREDIT CARD CHARGES | 21,105.00 | 2.01% | 18,049.80 | 2.01% | 17,416.65 | 2.01% | 56,571.45 |
| CREDIT CARD CHARGEBACKS | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| COMPANY VISA | - | 0.00% | - | 0.00% | - | 0.00% | - |
| POSTAGE & DELIVERY | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| PRINTING & REPRODUCTION | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| OFFICE SUPPLIES | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| CASH SHORT/OVER | 420.00 | 0.04% | 359.20 | 0.04% | 346.60 | 0.04% | 1,125.80 |
| BANK FEES | 2,310.00 | 0.22% | 1,975.60 | 0.22% | 1,906.30 | 0.22% | 6,191.90 |
| EMPLOYEE/CUSTOMER RELATIONS | 1,365.00 | 0.13% | 1,167.40 | 0.13% | 1,126.45 | 0.13% | 3,658.85 |
| TOTAL ADMINISTRATIVE EXPENSE | 52,080.00 | 4.96% | 37,356.80 | 4.16% | 36,046.40 | 4.16% | 125,483.20 |
| TOTAL OPERATING PROFIT | 211,260.00 | 20.12% | 165,650.80 | 15.78% | 159,786.40 | 15.22% | 536,697.20 |

Revised July 19th 2011

|  | Budget | | | | | | 3 Period |
|---|---:|---:|---:|---:|---:|---:|---:|
|  | P8 | | P9 | | P10 | | TOTAL |
| SALES TAX DISCOUNT | - | 0.00% | - | 0.00% | - | 0.00% | - |
| DELIVERY CHARGE | - | 0.00% | - | 0.00% | - | 0.00% | - |
| MISC. SALES | - | 0.00% | - | 0.00% | - | 0.00% | - |
| OTHER INCOME | - | 0.00% | - | 0.00% | - | 0.00% | - |
| **TOTAL OTHER INCOME** | - | 0.00% | - | 0.00% | - | 0.00% | - |
|  | | | | | | | |
| CONTRIBUTIONS/DONATIONS | 4,200.00 | 0.40% | 3,592.00 | 0.40% | 3,466.00 | 0.40% | 11,258.00 |
| LIABILITY INSURANCE | 5,880.00 | 0.56% | 5,028.80 | 0.56% | 4,852.40 | 0.56% | 15,761.20 |
| LIFE INSURANCE | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| LIFE INS-CO. BENEFICIARY | 210.00 | 0.02% | 179.60 | 0.02% | 173.30 | 0.02% | 562.90 |
| WORKER'S COMPENSATION INSURANCE | 4,935.00 | 0.47% | 4,220.60 | 0.47% | 4,072.55 | 0.47% | 13,228.15 |
| LICENSES AND PERMITS | 1,155.00 | 0.11% | 987.80 | 0.11% | 953.15 | 0.11% | 3,095.95 |
| DUES & SUBSCRIPTIONS | 105.00 | 0.01% | 89.80 | 0.01% | 86.65 | 0.01% | 281.45 |
| COMMON AREA MAINTENANCE | - | 0.00% | - | 0.00% | - | 0.00% | - |
| RENT | 44,100.00 | 4.20% | 44,002.00 | 4.90% | 44,018.20 | 5.08% | 132,120.20 |
| PERSONAL PROPERTY TAX | 945.00 | 0.09% | 808.20 | 0.09% | 779.85 | 0.09% | 2,533.05 |
| REAL PROPERTY TAX | 19,845.00 | 1.89% | 16,972.20 | 1.89% | 16,376.85 | 1.89% | 53,194.05 |
| CONSUMER USE TAX | - | 0.00% | - | 0.00% | - | 0.00% | - |
| CHEVYS ROYALTIES | 39,795.00 | 3.79% | 34,034.20 | 3.79% | 32,840.35 | 3.79% | 106,669.55 |
| CHEVYS MARKETING FEE | 5,250.00 | 0.50% | 4,490.00 | 0.50% | 4,332.50 | 0.50% | 14,072.50 |
| **TOTAL OCCUPATIONAL COSTS** | **126,525.00** | **12.05%** | **114,495.00** | **12.75%** | **112,038.45** | **12.93%** | **353,058.45** |
|  | | | | | | | |
| **RESTAURANT OPERATING PROFIT** | **84,735.00** | **8.07%** | **51,155.80** | **4.87%** | **47,747.95** | **4.55%** | **183,638.75** |
|  | | | | | | | |
| DEPRECIATION EXPENSE | - | 0.00% | - | 0.00% | - | 0.00% | - |
| LOAN INTEREST | 30,030.00 | 2.86% | 30,083.00 | 3.35% | 30,067.55 | 3.47% | 90,180.55 |
| MISC. EXPENSE | - | 0.00% | - | 0.00% | - | 0.00% | - |
| OVERHEAD ALLOCATION | 23,100.00 | 2.20% | 19,756.00 | 2.20% | 19,063.00 | 2.20% | 61,919.00 |
| AMORTIZATION-FRANCHISE FEES | 840.00 | 0.08% | 718.40 | 0.08% | 693.20 | 0.08% | 2,251.60 |
| AMORTIZATION-LOAN FEES | 420.00 | 0.04% | 449.00 | 0.05% | 433.25 | 0.05% | 1,302.25 |
| TRADE REDEEMED | - | 0.00% | - | 0.00% | - | 0.00% | - |
| CRESTWOOD EXTRAORDINARY EXPENSES | - | 0.00% | - | 0.00% | - | 0.00% | - |
| WEST COUNTY EXTRAORDINARY EXPENSES | - | 0.00% | - | 0.00% | - | 0.00% | - |
| GUARANTEED PYMT JW | 16,800.00 | 1.60% | 16,613.00 | 1.85% | 16,463.50 | 1.90% | 49,876.50 |
| GUARANTEED PYMT DT | 5,775.00 | 0.55% | 4,939.00 | 0.55% | 4,765.75 | 0.55% | 15,479.75 |
| GUARANTEED PYMT EE | 6,720.00 | 0.64% | 5,747.20 | 0.64% | 5,545.60 | 0.64% | 18,012.80 |
| GUARANTEED PYMT TB | 6,300.00 | 0.60% | 5,388.00 | 0.60% | 5,199.00 | 0.60% | 16,887.00 |
| UNCLAIMED PROPERTY | - | 0.00% | - | 0.00% | - | 0.00% | - |
| **TOTAL OTHER EXPENSE** | **89,985.00** | **8.57%** | **83,873.20** | **9.34%** | **82,230.85** | **9.49%** | **256,089.05** |
|  | | | | | | | |
| **NET PROFIT OR (LOSS)** | **( 5,250.00 )** | **-0.50%** | **( 32,717.40 )** | **-3.12%** | **( 34,482.90 )** | **-3.28%** | **( 72,450.30 )** |